## N. B. K. PETTINGILL

*v.*

## MANUEL ZENO GANDIA,

and

## MANUEL ZENO GANDIA

*v.*

## N. B. K. PETTINGILL.

---

San Juan, Law, Nos. 467 and 548.

### LIBEL.

1. The district court of the United States for Porto Rico, while not a national court in the constitutional sense, yet is one of the courts of

Pettingill v. Gandia.

the Federal territorial system, as distinguished from the local territorial or insular courts.

2. The United States District Attorney of the court may practise in civil cases, and such practice involves no moral turpitude nor any legal wrong.

3. The local law prohibiting district attorneys from practising in civil cases has no application to the Federal court.

4. No person has a right to libel another for doing something, not prohibited by law, about the morals of which they disagree.

5. While the truth may be pleaded in justification of an alleged libel of a public official, this means that defendant must prove that the acts which he criticized are contrary to law.

6. When defendant justifies and fails to prove his allegations, the attempted justification is an aggravation of the libel.

7. One who has been libeled may defend himself by like publications, if he does so within a reasonable time, and does not exceed proper limits.

8. That plaintiff was removed from office by the President cannot be taken into account in a libel suit, nor the motives of the President inquired into.

9. The legislative bodies of Porto Rico are supreme within their respective spheres, and no inquiry can, in a suit for libel, be made as to their motives.

10. Congress or the President can alone make such inquiry, and no court can interfere when such bodies act within the scope of their legislative functions.

11. A publisher of a newpaper has no greater liberty than an individual to publish statements concerning others.

12. Criticism of public officials must be inspired by good motives, and must be reasonable.

13. Articles in a newspaper held to be libelous *per se*.

14. Punitive damages should be given when the publication was maliciously made and without good motive, or for the public good, but with intent to injure, and *per contra*.

15. Allegations contained in court proceedings are usually privileged, and are presumed to be the allegations of the party who makes the same, and not of the attorney or solicitor.

16. Reports to superior officers, even though containing libelous matter, are also privileged; but publications of them, by the person making

Pettingill v. Gandia.

them, after the matter is over, and unnecessarily, and with direct intent to injure, and with malice toward the person against whom directed, are actionable.

17. The burden of proving these facts is on the person against whom the libel is directed.

18. Malice is not presumed in any privileged statement, although the same should afterward be published unnecessarily; as to whether there was malice in the after-publication is matter for the jury.

Case tried December 16, 1908.

---

*Mr. Willis Sweet, Mr. Harry P. Leake,* and *Mr. N. B. K. Pettingill,* attorneys for plaintiff.

*Mr. Henry F. Hord,* attorney for defendant.

Instructions by RODEY, Judge:

The facts in the case sufficiently appear from the instructions.

RODEY, Judge, omitting the formal parts, gave the following instructions to the jury:

You have now heard all of the evidence and the arguments in these important cases, or in this important case, because both causes of action have been consolidated by an order of the court, and, as you have seen, have been tried together before you. Laying all other matters aside, and throwing out of your minds the feelings of the respective parties, the court and the jury should each approach its decision with a mentality analogous to the calm level of the sea, from which all heights and depths are measured.

The plaintiff sues the defendant for having, as he claims,

IV. PORTO RICO—25.

grossly libeled him both as a man and as an attorney of this court, and as United States Attorney of the island of Porto Rico; and lays his damages in the sum of $50,000. The defendant answers the complaint, and denies a large portion of it, and insists that, as to the balance, he only made such reference to the plaintiff as he, the defendant, had a right to make in the way of reasonable comment upon the actions of the plaintiff as United States Attorney for Porto Rico. The defendant further sets up, in the way of a counterclaim against the plaintiff's damages, and independently of them, a cross complaint which he adds to his answer and files with it, and alleges that he, in turn, has been libeled by the plaintiff by reason of the plaintiff having published, or caused to be published, a gross libel upon him by showing it to strangers and publishing it or causing it to be published in the Porto Rico Review, and asserts that the matter involved in such publication grew out of the matters and things involved in the complaint of the plaintiff, and asserts that such publication by the plaintiff of this matter against him, the defendant, was not, at the time, privileged, and was, as he states, intentionally malicious and wholly unnecessary in plaintiff's defense of himself. As to this, the defendant alleges that he has been damaged in the sum of $75,000, and asks, first, that the same be set off against the damages, if any, which shall be found by you in favor of the plaintiff, and further, that, in such event, he have a judgment over for the surplus; and if, as he alleges, he shall be found not to be liable to the plaintiff in any damages, that damages be found in his favor for such sum within his claim as the evidence may show to be proper. Of course, the fact that the parties here claim these large amounts against each

other is no reason why you should grant either of them any such vast sums by your verdict, or, in fact, any sum at all, unless, under the facts as you shall find them, after you have applied the law thereto, as here given you, they or either of them shall prove to be entitled thereto. These amounts claimed in complaints are simply a limit beyond which juries cannot go in their verdicts, and sometimes they are placed by the parties or counsel at a sum which it would be reasonable to recover, and at other times they are placed high and even out of all proportion to any possible damage that has accrued to either; but, as to the amount of damages, whether the same shall, in any case, be nominal or substantial, the jury, under the instructions of the court, is the judge. The law and the facts that surround this case are so peculiar and the evidence has been such as that it is incumbent upon the court to make a proper statement for your information and your guidance.

The situation of this particular court under national law is peculiar. Nowhere else under the flag is there such a court, save in the territory of Hawaii, and even in that case, as we understand it, the entire cost and expense of conducting the court, and the payment of all salaries connected therewith, is made, as in all other cases except in this island of Porto Rico, directly from the Treasury of the United States. It is hoped that Congress will correct this as to this court, and thus place it on the same footing as all the courts elsewhere. There are in the nation two systems of courts: one system that belongs entirely to each sovereign state itself, and which is wholly independent of, and has no connection with, courts of the United States; there is also spread over the entire nation in the States a system of United States courts beneath and subject to the

Pettingill v. Gandia.

Supreme Court of the United States. These consist of district courts, circuit courts, and the circuit courts of appeals of the United States. Their jurisdiction is strictly defined by law, and the judges thereof are appointed for life or during good behavior, while the United States Attorneys under them are appointed by the President and confirmed by the Senate for terms of four years, or their sooner removal by the Executive for cause. In all the territories of the nation since the days of the creation of the first territory, except in the cases of Hawaii and Porto Rico, there has been but one system of courts which acts both for the national and local government, each paying part of the salary and expenses thereof. In this island, Congress followed its procedure in the case of Hawaii, and established the district of Porto Rico, and created this district court of the United States, to have jurisdiction therein, and provided a United States Attorney for the district, the same as is usual.

At this point the Foraker act makes a radical and anomalous change, in that, instead of providing that the salaries and expenses of this court should be paid directly out of the national Treasury, as is customary, it provided that such salaries and expenses should be paid on the warrant of the auditor of the island, countersigned by the governor. This peculiar provision was evidently inserted because, in that very same law, Congress had done what had never before been done with reference to any territory beneath the flag; that is, it gave to the island a vast sum of money annually, that, as to all other territories, goes only into the national Treasury, and becomes national revenue; that is, the entire customs duties and internal revenues of the island; and, further, gave the island power to fix the internal revenues to suit itself. No other dependency or territory has

Pettingill v. Gandia.

ever been blessed like this. Such other territories have been forced to make all their internal improvements, and sustain their government, schools, and colleges almost wholly from direct taxation of the property within the respective jurisdictions. Evidently Congress, after having so blessed Porto Rico above all the other territories, felt that it ought to pay the cost and expense of sustaining this court; and so that same law provided that not only should there be kept out of the funds thus collected, sufficient to pay the large number of officials of the customs department of the United States who collect it, even before the funds are turned over to the island, but also provided that, after it was turned over, the island should pay the salaries and expenses of this court. For this reason, as you have seen, it may be possible that a wholly unwarranted idea has arisen in the minds of some people, that the island, and not the nation, is sustaining this court, although this court, as to its jurisdiction, and in every other respect, is absolutely independent of every official and tribunal of this island, and takes orders from no official or department connected with the local government, but exercises the jurisdiction of a circuit and district court of the United States, and additional jurisdiction as well, that is specially given it by Congress, as fully to all intents and purposes as does any circuit or district court of the United States in any state of the Union.

In fact, Porto Rico is organized more like a state than are the other territories of the nation, with the exception of Hawaii. Congress, by the Foraker act, created a complete system of government for this island, with a governor, a legislature, and a complete judicial system of its own, which are three coördinate branches of the local government, and are as separate from each

Pettingill v. Gandia.

other, save for the peculiar position of the executive council, as is the case in a state; and the national judicial authority in the island is wholly separated from the local government by the creation of this court and the appointment of a Judge and a United States Attorney for the island.

It may be added here that, save for the apparent incongruity, or, we might say, for lack of a better word, save for the apparent humiliation of a national court having to receive its money at the hands of local officials, who audit its accounts, there is no difficulty about this financial arrangement regarding the court, and save for some friction, which has now happily passed, the court has managed to get along very smoothly with the insular officials, and they exhibit no desire to hamper it in any way regarding its work or its jurisdiction. This, in short, is the position of this court without reference to what the opinion of any individual or editor to the contrary may be. This statement is made to you, so as to enable you to understand the situation with reference to the facts in this case.

There is nothing in the law of the United States, express or implied,— and, in fact, the custom has been to the contrary, — that would prevent a District Attorney of the United States from engaging in the general practice of the law in the state where his district is, whenever his employment does not conflict with his duties as District Attorney of the United States, and when it is not prevented by local rules of court or express local statute. So far as is known, Porto Rico is the only place in the nation having a district court of the United States, where the local Attorneys General and District Attorneys are not thus permitted to practise locally in the courts. Therefore you are instructed that it involved no moral turpitude, and there was

no legal wrong denounced by law, in the action of Judge Pettingill in practising law locally in the island of Porto Rico, at the times and in the manner in which the evidence tends to show, and he himself admits, he did practise.

The local legislature, of course, might pass a law, if it desired to do so, that would prevent the United States Attorney from practising law in the insular courts, but it has no power to pass any law affecting his conduct in this court, and the local law which was, and is, on the statute books, did not, and does not, apply to the District Attorney of the United States for this island, because he was not, and he is not, a "fiscal," such as is referred to in the local law. Of course, there are some things in which every person must be the judge of the propriety of his own conduct or action; and, if he chooses to do a thing that is not prohibited by law, which another thinks he ought not to do, such fact does not justify that other person in libeling him therefor. Judge Pettingill had a right under the law, and subject to the possible approval or disapproval of the Attorney General or President of the United States, to choose for himself as to whether or not he would take cases as a practising lawyer in Porto Rico, where the local government or the people of the island was the prosecutor or the defendant. You are instructed that, while the law of Porto Rico provides that, when a public employee is libeled, and the libel refers to acts connected with his office, judgment shall be rendered for the defendant if he proves the truth of his charges, this means that he must prove that the acts which he criticized, and with reference to which he libeled a plaintiff, were wrong in law, and not that they were wrong in the opinion of the person who commits the libel, or others; and whenever a person who has libeled another jus-

Pettingill v. Gandia.

tifies and attempts to prove the truth thereof in law, if he fails
to do so, that fact may be considered as aggravation of the
damages that may be awarded by the jury. .

You are instructed that whenever one person libels another
by a writing or publication, that other has a perfect right to
defend himself by a like writing or publication, if the same is
done immediately or within a reasonable time thereafter, in
the regular course of the controversy; and if, in so doing, he
does not go beyond what is a proper defense of himself, then
all that he does in that regard is privileged, and he is not
subject to an action for thus defending himself.

Congress, which, since American occupation, is the supreme
judge of what is best for this island, for reasons that were
sufficient to itself, placed this court, with its three divisions, here,
and provided that it should be conducted in the English lan-
guage; and whenever it has jurisdiction it is its duty, as it is
yours, to hold the scales of justice even between all parties,
and only permit the one side or the other to be weighted down
as the facts and the law may warrant. Its duty is to live in
peace and harmony with all the officials and all the people upon
the island, but never at the cost of receiving orders or being
dictated to by anybody.

The American system of government consists of three distinct
and coördinate branches,—the executive, the legislative, and the
judicial. Each of these branches is supreme within its own
proper sphere, and has no right to encroach upon the preroga-
tives of the other.

It is also fundamental under our system of government and
our laws, that wherever the Chief Executive of the nation or
of any state is vested with the power of appointing an official,

Pettingill v. Gandia.

and of removing him, such action of the Chief Executive of the nation or the state is not subject to question in any tribunal; and therefore, although you may believe from the evidence in this cause that the plaintiff was removed by the Chief Executive of the nation from his office of United States Attorney for the district of Porto Rico, still that fact must cut no figure in your verdict, one way or the other, nor can you, when estimating any damage to which you may believe the plaintiff entitled, if you find for him under these instructions, take into consideration the question of his removal from office at all for any purpose, nor can you take into consideration his loss of salary because of such removal, as an element in estimating his damages. In like manner, as with the Chief Executive, the legislative bodies of every jurisdiction under our system of government are also supreme within their own proper spheres, and therefore you cannot inquire into the motives that governed the executive council of Porto Rico in its action with reference to the plaintiff Pettingill, because neither this court nor any other court has any right to make inquiries in that regard, nor can you consider their action in estimating damages of the plaintiff, if you shall find for him under the facts of this case and the law as here given to you. The libel of Pettingill by Zeno Gandia must stand or fall on its own merits. Congress itself, or the President, who appoints them under it, alone has power to take action as to the motives governing the action of the executive council of Porto Rico, and no court can ordinarily interfere when they act within the scope of their legislative functions.

Liberty of speech and of the press has ever been highly prized by the American people, and the fathers who framed the Constitution provided strictly against the infringement or cur-

Pettingill v. Gandia.

tailing of these great human rights. Under our system of government, and such is almost the language of nearly all of the state Constitutions, every person shall be at liberty to write or speak freely on any subject; but it is always provided that such speaker or writer shall be strictly responsible for any abuse of these great privileges. In other words, liberty of the press can never be permitted to degenerate into license of the press; and the publisher of a newspaper has no more right to libel an individual than has any other person. Newspapers owe no duty to the public that gives them any greater privilege than individuals, but it is fundamental, under our system of government, that publishers may freely criticize and comment upon the actions of all public officials, as well as candidates for office, when the same is done with good motives; and if such publisher goes no further in such criticisms than may be necessary or proper in fairly commenting upon or criticizing such actions, just as an individual might do, then the same is what has become known as a privilege of the press, and such publisher or editor is not liable therefor; but you are instructed that, in this case, the publication by the defendant Manuel Zeno Gandia, in "La Correspondencia," of the several articles that have been read to you regarding plaintiff Pettingill, when taken as a whole, have been held by this court to be, and you are instructed that they are, what is known in law as libelous *per se;* that is, that they contain language with reference to the plaintiff that affects him in his office as United States Attorney, in such a manner as that the person libeled has a cause of action against the person who made the publication, and malice in the writer is presumed in law. Therefore, in any event, you must find for the plaintiff upon that issue, and give him such damages as you

Pettingill v. Gandia.

may believe, from all the facts and circumstances in the case, he is entitled to. In estimating these damages you may take into consideration the character of both parties; and if you find them both to be of high standing, then you may consider that fact as an element in estimating the damage,—on the one hand, the weight which would be given to an editorial by a man of high standing in the community, and, in like manner, the injury which would be done to a man of equally high standing and character against whom the libel is directed. In addition to this, there is another element of damage, known as punitive damages, or smart money, which it is the duty of juries in libel cases to add to the ordinary damages of the cause, and these damages it is the duty of the jury to give when they believe, from a preponderance of the evidence, that the person who committed the libel did it maliciously and without any good motive for the public good, but with direct intent to injure the person against whom the libel is directed. Therefore, if you believe, from a preponderance of the evidence in this case, that when the defendant Gandia published these articles that are *per se* libelous against the plaintiff, it was done with the intent to injure the plaintiff specially, and not with any desire to do public good, or to properly comment upon his actions as a public official, then it is your duty to add to the other damages, and you are bound to give him such punitive damages as, under all the facts and circumstances of the case and these instructions, you believe him to be entitled to. This may be any such sum as you, in reason, under all the facts and circumstances, think ought to be imposed upon the defendant for his malice in publishing the libel referred to. The law obliges juries to add this "smart money" damage in such cases, not that the

plaintiff is entitled to it inherently, but as a deterrent to others against committing a like offense. In this regard, however, you are warned as to both sides of the case, that it is no part. of the duty of a court or jury to become imbued with the excited feelings of either of the parties, or of their counsel, as to the damage that may have been done to them, nor is it any part of the duty of a court or jury to enable either of the parties to profit or suffer unreasonably by a decision or verdict in any cause, save as the same may be in accordance with the facts, the law, and right and justice.

If, on the other hand, you should believe, from a preponderance of the evidence, that the defendant Gandia, when publishing these *per se* libelous articles against the plaintiff, was actuated by worthy motives, and in good faith believed that he was endeavoring to correct a wrong which he, in good faith, believed existed, and which ought to be corrected for the public good, then this being in good faith will prevent you from granting punitive damages, and the plaintiff will be entitled to recover only the regular damages which plaintiff Pettingill suffered, as hereinbefore defined to you.

A great deal of evidence has been introduced as to the allegations which the plaintiff Pettingill inserted, first, in a certain bill in equity in this court, regarding the executive council of Porto Rico, and second, that he put in a complaint or bill in equity, whichever it was, in this court, in a suit against this defendant. In this regard you are instructed that whenever an attorney at law draws a complaint, and, under the direction of his client, makes allegations in the same which are sworn to by his client, such allegations are not the allegations of the attorney himself, but they are the allegations of his client, and

Pettingill v. Gandia.

the lawyer is absolutely exempt from any prosecution or suit for libel thereunder, and it is only in the rarest cases, and then not in all jurisdictions, where the client, even, is liable for any such allegations. Therefore, you are instructed that such allegations in a complaint, as to the attorney, are absolutely privileged, and no action will lie against him by the person against whom the allegations are directed.

Further, it is the law that whenever any person makes a report to a superior officer of the government, such report, even though it contains matter that is, in itself, a libel upon some other person, is absolutely privileged, and the person making it is not subject to an action for damages therefor by any person, not even by the person against whom the libelous matter is alleged. Therefore, you are instructed that plaintiff Pettingill in this case did not commit any libel against the defendant Gandia in or about the Antongiorgi suit, or in and about the answer or report of the said Pettingill to the Attorney General of the United States, and therefore such answer or report of the plaintiff to the Attorney General of the United States was and is absolutely privileged; and unless you believe, from a preponderance of the evidence, that said Pettingill, after the matter was all over, and he had made this report to the Attorney General, unnecessarily, and with direct intention and malice against the defendant Gandia, showed copies of his report, containing such libel, to others than his partners, or published the same unnecessarily in the Porto Rico Review,—and the burden of proving this is on Gandia by a preponderance of the evidence, —then the defendant Gandia has no cause of action at all against Pettingill, and the cross complaint would be, in such case, entirely eliminated from this action; but, if you believe,

from a preponderance of the evidence, that plaintiff Pettingill did so maliciously, and with intent to injure the defendant Gandia, show and publish his said answer or report, then you are further instructed that the same contains matter that is libelous *per se* against this defendant Gandia, and you should, in like manner, find for him, and estimate his damages under the same rules as you are here instructed to estimate the damages for the plaintiff in the main issue, including smart money; but, if you shall believe, from a preponderance of the evidence, that any showing of the said report or answer by the said Pettingill to his partner or others, after the matter was all over, as aforesaid, and any publication of the same, was done without malice upon the part of the said Pettingill, then and in such case and in like manner the cross complaint must be eliminated from the cause entirely, because, as the communication of Pettingill to the Attorney General was not written in malice in the first place, but was in law privileged, then malice cannot be presumed in its favor afterwards, and the burden is upon Gandia to show such malice by a preponderance of the evidence. It you find, under the instructions as here given you, that the defendant Gandia is entitled to any damages against the plaintiff on the cross complaint, then you may set off such damages against any damages you find for the plaintiff; and if either side preponderates in the amount of damages found by you, that is the side you must find for on the whole case, giving such person only the surplus damages over and above the offset of the other side.

You are instructed that by a preponderance of the evidence is not meant that one side or the other must have the more witnesses, or the greater number of exhibits, but it means the

Pettingill v. Gandia.

side on which you, as fair-minded and honest men, after a full, fair, and impartial consideration of all the facts and circumstances of the case, believe the truth to be, .and after you have applied the law, as here given you, to the facts of the case as you shall find them.

You are instructed that the high standing of the parties, or either of them, as such, or the wealth or lack of wealth of either of them, as such, or the nationality or race of either of them, as such, or the opinions of their lawyers, or their friends or enemies, must not cut any figure in your deliberations as to their rights as here instructed, for they both have exactly equal rights before the court and before you, under the law and under your oaths, which you took when you were empaneled to try this case; neither should any of you be affected in any manner whatsoever by your acquaintance or lack of acquaintance with either of the parties, or their attorneys, or their relatives, or their friends, or their enemies. It is always a species of moral cowardice in courts and juries to be embarrassed in giving a decision or finding a verdict to such an extent as that the decision or the verdict is affected thereby. No one but yourselves is under oath to return a true verdict in this cause. No one's conscience is bound but yours. Neither has either of the parties, or their friends or enemies, any right to ever question you for the verdict you may render in this cause, either now or hereafter. It would be a contempt of court for any such person to do so in your case, as much as it would be for them to do it in the case of the court itself. The only remedy for any person who may be dissatisfied after a decision or a verdict is a motion for a new trial, a motion for a rehearing, or an appeal.

Verdict for plaintiff Pettingill in the sum of $8,000.